# NO. 12-19-00065-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *UNITED FIRE LLOYDS,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

United Fire Lloyds filed this original proceeding in which it challenges Respondent's decision to quash Lloyds's depositions on written questions with subpoena duces tecum to non-parties.[1] We conditionally grant the writ in part.

## BACKGROUND

Inner Pipe Pipeline, LLC, the Real Party in Interest, owned a Commercial Property, Commercial Auto, and Inland Marine insurance policy issued by Lloyds. When Inner Pipe's property was damaged by fire, Inner Pipe filed a claim with Lloyds. Alleging that Lloyds refused to cover the damage and denied Inner Pipe's claim, Inner Pipe subsequently sued Lloyds for fraud, breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code.

In its answer, Lloyds alleged that Inner Pipe's principal, Edward D. Dailey, "intentionally set the fire or otherwise caused the fire to be set" and had the "motive, opportunity and means to set the fire, and there is substantial other evidence linking Dailey to the fire." Lloyds alleged that Inner Pipe's "coverage is void and/or otherwise excluded as a result of fraud and/or

---

[1] Respondent is the Honorable Campbell Cox, II, Judge of the 145th District Court in Nacogdoches County, Texas.

misrepresentations committed by [Inner Pipe], acting by and through [Dailey]," including the following:

(1) In committing arson by intentionally setting the fire in issue or causing it to be set;

(2) In concealing and failing to disclose, after directly asked, that previous businesses of which he had an interest had previous fire claims, when in truth he had multiple previous fire losses involving equipment belonging to DaileyCo, including one in which he was paid $80,000 in 2007, and another in which he was paid $140,000 in 2008;

(3) In failing to provide key documents to [Lloyds] in its investigation, including, but not limited to the invoice from Vermeer dated March 22, 2016, less than two months before the fire, documenting serious conditions to one of the pieces of equipment requiring replacement or repair, for which [Inner Pipe's] principal chose not to make, instructing Vermeer to re-install as is. Dailey provided other repair invoices to one of [Lloyds's] agents, but failed to provide the March 22, 2016 invoice;

(4) In making false claims in his sworn proof of loss, including, but not limited to, making a claim for three bear mounts with a value of $9600, as well as other animal mounts; in claiming he had a Rolex watch valued at $6500, kept in a bed side drawer which was destroyed by the fire; in claiming to have lost in the fire two F-5 Locators, valued at $10,500 each; and in claiming to have lost a $3000 Drone as a result of the fire; and

(5) In providing false testimony in his examination under oath.

Lloyds asserted arson and fraud, and denied liability on grounds that the fire resulted from an "incendiary origin," and Dailey intentionally set the fire or otherwise caused the fire to be set.

Lloyds also sought discovery of information regarding allegedly fraudulent tickets. According to an affidavit from Dailey's former bookkeeper, Darlene Estes, Dailey purchased blank tickets from Lufkin Printing with the name "Far South Mining," completed the tickets with false information indicating materials purchased from Far South, and submitted the tickets to Pumpco, Inc. for payment. She further averred that this occurred during her employ with both DCI Construction, which she maintained was owned by Edward and Debra Dailey, and Inner Pipe. Thus, Lloyds sought to take depositions by written questions with a subpoena duces tecum of the custodians of records for Pumpco, Far South Mining, Western Gas Partners, L.P., Lufkin Printing, and Gabriel/Jordan Ford.[2] The notices requested various documents, such as tickets, from January 1, 2012 or 2013 through July 1, 2016. Inner Pipe filed a motion to quash and for protection from discovery. After a hearing, Respondent concluded that the discovery was overly broad, overly

---

[2] According to Inner Pipe, the non-parties are customers and/or vendors of Inner Pipe.

2

burdensome, and not reasonably calculated to lead to admissible evidence. He granted Inner Pipe's motion to quash.

On December 12, 2018, Lloyds signed new deposition notices to the custodians of records for Far South, Western Gas, Lufkin Printing, and Pumpco. Lloyds asked the four non-parties to provide information regarding a range of ticket numbers that Lufkin Printing printed for Dailey, some of which Lloyds believed Dailey later fraudulently submitted for payment. From Far South, Lloyds sought "[a]ll invoices, tickets and/or statements pertaining to: Far South Mining Ticket Nos. 10851-10897 and 71502-77000." Western Gas was asked to provide "[a]ll invoices, tickets, checks and/or statements pertaining to: Inner Pipe Pipeline, LLC and/or DCI Timber Inc. dba DCI Construction referencing Far South Mining Ticket Nos.10851-10897 and 71502-77000." The notice to Lufkin Printing requested "[a]ll records pertaining to the purchase of Far South Mining Receipt Books (Reference No. 143267) purchased by Inner Pipe Pipeline, LLC and/or Edward Dailey." And the notice to Pumpco sought the following:

> 1. All invoices, tickets, checks and/or statements pertaining to: Inner Pipe Pipeline, LLC and/or DCI Timber Inc. dba DCI Construction referencing Far South Mining Ticket Nos. 10851-10897 and 71502-77000
>
> 2. All invoices, tickets, checks and/or statements pertaining to: Inner Pipe Pipeline, LLC and/or DCI Timber Inc. dba DCI Construction referencing Tuleta Stone Ticket Nos. 6200-6417

On December 19, Inner Pipe filed another motion to quash and for protection. Inner Pipe asked Respondent to prohibit or severely limit the requested discovery in scope and time. At the hearing on Inner Pipe's motion, Lloyds's counsel explained that the range of tickets requested was based on the number printed by Lufkin Printing at Dailey's request and the range could not be narrowed down any further because of uncertainty regarding which tickets Daily submitted that were fraudulent. Counsel further explained that the evidence would be admissible to prove intent, absence of mistake, and motive or scheme. According to counsel, Lloyds discovered numerous false acts allegedly committed by Dailey and Dailey's business was in "dire trouble" before the fire. Lloyds represented that it would accept the first forty documents, within the range, secured by the non-parties that are responsive to the propounded requests.

At the conclusion of the hearing, Respondent granted Inner Pipe's motion, finding that the discovery was overburdensome and would not reasonably lead to admissible evidence. Respondent did not believe the evidence to be relevant "because it still has to go to who set the

3

fire, why was a fire set, was he defrauding the insurance company." On January 4, 2019, Respondent signed an order granting the motion and holding that the proposed discovery is overly broad, harassing, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Respondent also granted the motion for protection "in its entirety." This original proceeding followed.[3]

## PREREQUISITES TO MANDAMUS

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). A writ of mandamus will issue only when the relator has no adequate remedy by appeal and the trial court committed a clear abuse of discretion. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). The relator has the burden of establishing both prerequisites. *In re Fitzgerald*, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding.). In the discovery context, the remedy by appeal is inadequate when (1) the appellate court would be unable to cure the trial court's discovery error, (2) the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error, or (3) the trial court disallows discovery and the missing discovery cannot be made part of the appellate record or the trial court, after a proper request, refuses to make it part of the record, and the reviewing court cannot evaluate the effect of the trial court's error. *Walker v. Packer*, 827 S.W.2d 833, 843-44 (Tex. 1992) (orig. proceeding). Because the quashed discovery pertains to Lloyds's alleged defenses and, having been quashed, cannot be made part of the appellate record, mandamus review is available. *See id*.

## ABUSE OF DISCRETION

Lloyds disputes Respondent's findings that the requested discovery is overly broad, harassing, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Thus, Lloyds maintains that Respondent abused his discretion by granting Inner Pipe's motion to quash and for protection from discovery.

### Standard of Review and Applicable Law

A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply

---

[3] Respondent granted Lloyds's motion for severance and abatement of Inner Pipe's extra-contractual claims.

4

the law. *Cerberus Capital*, 164 S.W.3d at 382. This standard has different applications in different circumstances. *Walker*, 827 S.W.2d at 839. When reviewing the trial court's resolution of factual issues or matters committed to its discretion, we may not substitute our judgment for that of the trial court. *Id*. The relator must show that the trial court could reasonably have reached only one conclusion. *Id*. at 840. Our review of the trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* This is because a trial court has no discretion in determining what the law is or applying the law to the facts. *Id*.

Texas Rule of Civil Procedure 205.1 authorizes a party to compel discovery from a nonparty by serving a subpoena compelling a request for production of documents or tangible things, pursuant to Rule 199.2(b)(5) or Rule 200.1(b), served with a notice of deposition on oral examination or written questions. TEX. R. CIV. P. 205.1(c). Generally, a party may obtain discovery regarding any unprivileged matter that is relevant to the subject matter of the pending action, even if it would be inadmissible at trial, so long as the information sought is "reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a); *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). The scope of discovery is broad, but "requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *CSX Corp.*, 124 S.W.3d at 152. "[R]equests must be 'reasonably tailored' to include only relevant matters." *Id*. Discovery may not be used as a fishing expedition or to impose unreasonable expenses on the opposing party. *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding); *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).

Discovery should be limited if the trial court determines that (a) it is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive; or (b) its burden or expense outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. TEX. R. CIV. P. 192.4. Additionally, to protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights, a trial court may make an order in the interest of justice that, among other things, orders that: (1) the requested discovery not be sought in whole or in part; (2) the extent or subject matter of discovery be limited; (3) the discovery not be undertaken at the time or place specified; (4) the

discovery be undertaken only by such method or upon such terms and conditions or at the time and place directed by the court; and (5) the results of discovery be sealed or otherwise protected, subject to the provisions of Rule 76a. TEX. R. CIV. P. 192.6(b). Although a trial court may exercise some discretion in granting a protective order, such discretion is not without bounds. *In re Collins*, 286 S.W.3d 911, 919 (Tex. 2009) (orig. proceeding). The party seeking a protective order must show particular, specific, and demonstrable injury by facts sufficient to justify a protective order. *Id*.

**Standing**

We first address Lloyds's contention that Inner Pipe lacked standing to object to the requested discovery. Inner Pipe asserts standing under rules of civil procedure 200.3(b) and 192.6.

Rule 200.3, entitled "Questions and Objections," expressly provides that "*any party* may object to the direct questions [to be propounded to the witness] and serve cross-questions on all other parties." TEX. R. CIV. P. 200.3(b) (emphasis added). Rule 192.6, which addresses protective orders, provides in pertinent part as follows:

> A person from whom discovery is sought, and *any other person affected by the discovery request*, may move within the time permitted for response to the discovery request for an order protecting that person from the discovery sought. A person should not move for protection when an objection to written discovery or an assertion of privilege is appropriate, but a motion does not waive the objection or assertion of privilege.

TEX. R. CIV. P. 192.6(a) (emphasis added). The use of "'and' means that both the potential deponent and any other person affected by the discovery request are entitled to seek protection by filing motions for protection." *In re Garza*, 544 S.W.3d 836, 842 (Tex. 2018) (orig. proceeding). Accordingly, the rules demonstrate that Inner Pipe had standing to both object to and seek protection from the discovery propounded on the four non-parties. *See In re R.C.K.*, No. 09-16-00132-CV, 2016 WL 3197585, at *2 (Tex. App.—Beaumont June 9, 2016, orig. proceeding) (mem. op.) (rejecting contention that party lacked standing to object to production by third parties of own medical records, based on Rules 200.3(b) and 192.6(a)).

Lloyds acknowledges that "there may be certain objections a party may have when discovery is directed to third parties[,]" but objections that discovery is overly broad or burdensome should be made by the "party who will be called upon to respond to the discovery." Citing *In re State Farm Mutual Auto Insurance Company*, 982 S.W.2d 21 (Tex. App.—Houston

[1st Dist.] 1998, orig. proceeding), Lloyds argues that there is no undue burden to Dailey or Inner Pipe because the requested documents are not owned by them or in their possession. In *State Farm*, the trial court signed an order prohibiting State Farm from obtaining bank records for the operating account owned by the real party in interest's former law firm. *State Farm*, 982 S.W.2d at 22. In determining that State Farm was entitled to the requested discovery, the court of appeals stated that no undue burden would be placed on the real party in interest because the requested records were not owned by him or in his possession. *Id*. at 24. This analysis is certainly pertinent to whether the discovery is unduly burdensome; however, *State Farm* did not address the real party in interest's standing to object. Thus, *State Farm* is not dispositive of Inner Pipe's standing. Because the plain language of Rules 200.3 and 192.6 allows Inner Pipe to object and places no limitations on the type of objections that can be raised, we decline to read any such restrictions into the plain language of these rules. *See Mandel v. Lewisville Indep. Sch. Dist.*, 499 S.W.3d 65, 74 (Tex. App.—Fort Worth 2016, pet. denied) (appellate courts apply rules of civil procedure in accordance with their plain language).

Although not a witness to whom discovery was propounded, Inner Pipe is a party to the lawsuit and, as such, is certainly affected by the challenged discovery requests. *See* TEX. R. CIV. P. 192.6(a), 200.3(b). Thus, Inner Pipe had standing to object to the discovery Lloyds served on the four non-parties. *See Garza*, 544 S.W.3d at 842; *see also R.C.K.*, 2016 WL 3197585, at *2.

## Overbroad

Whether a discovery request is overbroad is distinct from whether it is burdensome or harassing. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding). Overbroad requests encompass time periods, products, or activities beyond those at issue in the case, matters of questionable relevancy to the case at hand. *Alford Chevrolet-Geo*, 997 S.W.2d at 180 fn.1. An overbroad request for irrelevant information is improper whether it is burdensome or not. *Nat'l Lloyds Ins. Co.*, 449 S.W.3d at 488. "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *CSX Corp.*, 124 S.W.3d at 153.

In this case, Lloyds requested information regarding a voluminous series of specific ticket numbers that Inner Pipe may, via Dailey, have fraudulently submitted for payment. The "sheer volume of a discovery request does not in itself render the request irrelevant or overbroad

7

as a matter of law." ***Alford Chevrolet-Geo***, 997 S.W.2d at 180 fn.1. Nevertheless, a discovery request that is unlimited as to time, place, or subject matter is overly broad as a matter of law. ***In re Brookshire Grocery Co.***, No. 12-06-00065-CV, 2006 WL 2036569, at *2 (Tex. App.—Tyler July 21, 2006, orig. proceeding) (mem. op.); *see **In re Sun Coast Res., Inc**.*, 562 S.W.3d 138, 147 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). According to Estes's affidavit, she worked for DCI from September 2012 through July 2013 and began working for Inner Pipe in January 2014. It was during her employment with both that she observed Dailey submitting the allegedly fraudulent tickets. Moreover, Lloyd's first set of discovery did contain time limits, i.e., from January 1, 2012 through July 1, 2016 and from January 1, 2013 through July 1, 2016. Yet, Lloyds's second set of requests is not limited to any particular time period. Thus, they are overbroad as a matter of law and the presentation of evidence was unnecessary to decide whether the requests were overbroad. *See **Brookshire Grocery***, 2006 WL 2036569, at *2. Because the requests could have been more narrowly tailored, Respondent did not abuse his discretion by determining that the requests are overbroad.[4] *See **CSX Corp.***, 124 S.W.3d at 153.

## Unduly Burdensome

A party objecting or asserting a privilege must present any evidence necessary to support the objection or privilege. ***In re CI Host, Inc.***, 92 S.W.3d 514, 516 (Tex. 2002) (orig. proceeding); TEX. R. CIV. P. 193.4(a). The party resisting discovery cannot simply make conclusory allegations that the requested discovery is unduly burdensome or unnecessarily harassing. ***Alford Chevrolet-Geo***, 997 S.W.2d at 181. Any party who seeks to exclude matters from discovery on grounds that the requested information is unduly burdensome, costly, or harassing to produce, has the affirmative duty to plead and prove the work necessary to comply with discovery. ***Indep. Insulating Glass/Southwest, Inc. v. Street***, 722 S.W.2d 798, 802 (Tex. App.—Fort Worth 1987, orig. proceeding).

Here, Inner Pipe attached no evidence to its motion to quash that would demonstrate that the requests are unduly burdensome or harassing. Nor did Inner Pipe offer such evidence at the hearing on its motion. Any arguments made by its counsel do not constitute evidence. *See **Clayton***

---

[4] Inner Pipe also complains that the requests reference irrelevant invoicing to or from DCI, a non-party in which neither Inner Pipe nor Dailey have an ownership interest. However, as previously stated, Estes's affidavit states that Edward and Debra Dailey owned DCI and, during Estes's employ with DCI and Inner Pipe, Dailey purchased and submitted the tickets he obtained from Lufkin Printing. Thus, we cannot say that references to DCI are irrelevant. Moreover, "reasonably. . . tailored discovery request is not overbroad merely because it may include some information of doubtful relevance[.]" ***In re Am. Optical Corp.***, 988 S.W.2d 711, 713 (Tex. 1998).

*v. Wisener,* 169 S.W.3d 682, 684 (Tex. App.—Tyler 2005, no pet.). And any undue burden associated with complying with the requests is not readily apparent from the face of the requests themselves. *See In re Waste Mgmt. of Tex., Inc.*, 392 S.W.3d 861, 873 (Tex. App.—Texarkana 2013, orig. proceeding) (party's nonproduction not justified merely because request is burdensome; only undue burden warrants nonproduction). Absent evidence demonstrating that the requested discovery is unduly burdensome or harassing, Respondent could not make an informed judgment on whether to limit discovery or place the cost for complying with the discovery. *See Street*, 722 S.W.2d at 802. Moreover, no undue burden would be placed on Inner Pipe because the documents requested are in the possession of the non-party witnesses, not Inner Pipe. *See State Farm*, 982 S.W.2d at 24. Without evidence supporting Inner Pipe's claims of undue burden and harassment, Respondent abused his discretion by finding the discovery requests to be unduly burdensome and harassing. *See CI Host, Inc.*, 92 S.W.3d at 516; *see also Alford Chevrolet-Geo*, 997 S.W.2d at 184 (relators failed to support complaints of burdensomeness and harassment with anything more than general allegations; without more detailed explanation and proof, relators did not meet basic requirements for limiting scope of discovery under rules of civil procedure); *Street*, 722 S.W.2d at 802; TEX. R. CIV. P. 193.4(a).

## Discovery of Admissible Evidence

Lloyds contends that Respondent abused his discretion by finding the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence. According to Lloyds, evidence of the allegedly fraudulent tickets is relevant to Inner Pipe's financial health and viability and to motive, "as a thriving honest business would normally not have an incentive to manufacture a substantial insurance claim to pay off debt." Lloyds maintains that the discovery will show a pattern of fraud, intent to defraud, and the absence of mistake. Inner Pipe responds that the disputed discovery is not relevant to Lloyds's defenses because there is no meaningful connection between the discovery and the lawsuit's subject matter. According to Inner Pipe, evidence of prior acts to prove motive or intent is discoverable only when the acts are so connected with the particular transaction that they may all be part of a system, scheme, or plan.

A party may obtain discovery regarding any unprivileged matter that is relevant to the subject matter of the pending action, whether related to the claim or defense of the party seeking discovery or the claim or defense of any other party, provided the discovery is "reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a); *CSX Corp.*,

9

124 S.W.3d at 152. Relevant evidence is that which has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. TEX. R. EVID. 401. "The phrase 'relevant to the subject matter' is to be 'liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial.'" *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009) (quoting *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990)). It is not a ground for objection that the information sought will be inadmissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. TEX. R. CIV. P. 192.3(a); *see In re N. Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d 128, 131 (Tex. 2018) (orig. proceeding).

Accordingly, the question before us is not whether the requested discovery would be admissible at trial. *See* TEX. R. CIV. P. 192.3(a); *see also N. Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d at 131; *Brookshire Grocery*, 2006 WL 2036569, at *3 (admissibility is not the test for determining the scope of discovery). Rather, Respondent's denial of discovery was proper only if there existed no possible relevant, discoverable testimony, facts, or material to support Lloyds's defenses of arson and fraud or lead to evidence that would support Lloyds's defenses. *See Castillo*, 279 S.W.3d at 664.

To establish the affirmative defense of arson, Lloyds will be required to show that (1) the fire had an incendiary origin; (2) Dailey had a motive to set the fire or cause it to be set; and (3) Dailey had an opportunity to set the fire or other circumstances link Dailey to the fire. *See Routis v. Clarendon Am. Ins. Co., Inc*., No. 01-06-00459-CV, 2007 WL 1412566, at *5 (Tex. App.—Houston [1st Dist.] May 10, 2007, no pet.) (mem. op.) (citing *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 45 n.1 (Tex. 1998)). Evidence that Dailey may have fraudulently completed and submitted tickets to customers for payment, when no payment was due, raises a reasonable inference that Dailey was motivated to submit fraudulent tickets in order to generate income and alleviate financial strain. Lloyds's defense posits that Dailey likewise set the fire to obtain insurance money in the face of an ailing business. Evidence of prior acts is relevant to Dailey's motive to set the fire or cause the fire to be set. *See* TEX. R. EVID. 404(b)(2) (permissible purposes for evidence of crimes, wrongs, or other acts include motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident); *see also Garrett v. Standard Fire Ins. Co. of Hartford, Conn.*, 541 S.W.2d 635, 638 (Tex. Civ. App.—Beaumont 1976, writ ref'd n.r.e.) (in an arson case, "every circumstance which tends to cast light upon the

incident is legitimate and proper"). This is particularly true given that circumstantial evidence will likely be necessary for the factfinder to determine whether Dailey planned the fire for purposes of committing insurance fraud. *See **W.L. Lindemann Operating Co., Inc. v. Strange***, 256 S.W.3d 766, 776 (Tex. App.—Fort Worth 2008, pet. denied) (fraud is "usually so covert or attendant with such attempts at concealment as to be incapable of proof other than by circumstantial evidence"); *see also **Routis***, 2007 WL 1412566, at *5 (because arson is ordinarily committed in secrecy, it may be proved by circumstantial evidence).

Whether there is a meaningful connection between the discovery sought and Lloyds's defenses or whether the evidence would be admissible under the rules of evidence or otherwise is not before us. Discovery is intended to seek the truth such that disputes may be decided by what the facts reveal rather than what they conceal. *In re **Colonial Pipeline Co.***, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding). Given the purpose of discovery, we cannot say that there is no possible relevant, discoverable testimony, facts, or material that would either support Lloyds's defenses or lead to evidence that would support Lloyds's defenses. *See **Castillo***, 279 S.W.3d at 664. Because Lloyds's challenged discovery requests show a reasonable expectation of obtaining information that will aid the dispute's resolution, we conclude that Respondent abused his discretion by finding that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence. *See **CSX Corp.***, 124 S.W.3d at 152.

## Protective Order

Having determined that Respondent abused his discretion by finding that Lloyds's discovery requests propounded to the four non-parties is overly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, we conclude that Respondent likewise abused his discretion by signing a protective order to prohibit the requested discovery in its entirety. At most, Inner Pipe was entitled to an order limiting the requested discovery to a particular time period, as the requests are overbroad as a matter of law for lack of any time limitation. *See* TEX. R. CIV. P. 192.6(b)(1)-(2). Inner Pipe simply presented no evidence in its motion to quash and for protection, or at the hearing thereon, to establish particular, specific, and demonstrable injury by facts sufficient to justify a protective order barring the discovery in its entirety. *See **Collins***, 286 S.W.3d at 919; *see also **Alford Chevrolet-Geo***, 997 S.W.2d at 181 ("party must produce some evidence supporting its request for a protective order"); *In Matter of Issuance of Subpoenas Depositions of Bennett*, 502 S.W.3d 373, 377 (Tex. App.—Houston [14th

Dist.] 2016, orig. proceeding) (trial court abuses discretion by limiting discovery absent some evidence supporting request for a protective order).

## CONCLUSION

Based upon our review of the record and the foregoing analysis, we conclude that Respondent abused his discretion by granting Inner Pipe's motion to quash and for protection in its entirety. Accordingly, we ***conditionally grant, in part,*** Lloyds's petition for writ of mandamus. We direct Respondent to vacate his January 4, 2019, order quashing the discovery and granting a protective order, and in its stead, to issue an order imposing a time limit[5] on the propounded discovery and compelling the four non-parties to respond to the requests as limited. We trust Respondent will promptly comply with this opinion and order. The writ will issue only if the trial court fails to do so ***within ten days of the date of the opinion and order***. The trial court shall furnish this Court, within the time of compliance with this Court's opinion and order, a certified copy of the order evidencing such compliance.

**GREG NEELEY**
Justice

Opinion delivered April 24, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[5] The record is not entirely clear as to the applicable time limit that should be imposed. Thus, we leave that determination to Respondent.

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 24, 2019**

**NO. 12-19-00065-CV**

**UNITED FIRE LLOYDS,**
Relator
V.

**HON. CAMPBELL COX II,**
Respondent

## ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by United Fire Lloyds; who is the relator in appellate cause number 12-19-00065-CV and the defendant in trial court cause number C1733258, pending on the docket of the 145th Judicial District Court of Nacogdoches County, Texas. Said petition for writ of mandamus having been filed herein on February 28, 2019, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, ***conditionally granted in part***.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his January 4, 2019, order quashing the discovery and granting a protective order, and in its stead, to issue an order imposing a time limit on the propounded discovery and compelling the

four non-parties to respond to the requests as limited; the writ will not issue unless the **HONORABLE CAMPBELL COX, II** fails to comply with this Court order within ten (10) days from the date of this order.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*